**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| JEFFREY E. JOHNSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 05 C 1498 |
| ) | |
| MICHAEL F. SHEAHAN, SHERIFF; ) | |
| ACTING DIRECTOR KURTOVICH; ) | |
| C. PLAXICO, SUP'T, DIVISION 6; ) | |
| JOHN & JANE DOES 1-20, ) | |
| ) | |
| Defendants.[1] ) | |

**MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY, District Judge:

Plaintiff Jeffrey E. Johnson, an inmate at Dixon Correctional Center, brings this *pro se* complaint pursuant to 42 U.S.C. § 1983 alleging that while he was detained at Cook County Jail, he was not allowed to obtain a subscription to a newspaper directly from the publisher, in alleged violation of his First Amendment rights.

Defendants Michael Sheahan, Chester Plaxio, and Scott Kurtovich have moved to dismiss. Johnson has filed an objection to the motion to dismiss, a motion opposing the motion to dismiss, a motion in opposition to the motion to dismiss, and a supplemental motion opposing the motion to dismiss. These multiple responses are somewhat repetitious but also contain different arguments. Neither the Court nor the defendants should have to ferret through four separate responses to ascertain Johnson's arguments. In the future, Johnson may submit only

---

[1]Defendant John Stroger, Jr., was dismissed from this action in the Court's order of March 24, 2005.

one response to any motion the defendants file.

For the following reasons, the Court denies defendants' motion to dismiss.

## Discussion

When considering a motion to dismiss for failure to state a claim, the Court accepts the plaintiff's allegations as true, *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984), and construes any ambiguities in the complaint in the plaintiff's favor. *Thompson v. Ill. Dep't of Prof. Regulation*, 300 F.3d 750, 753 (7th Cir. 2002). *Pro se* complaints are liberally construed "and [are] not held to the stringent standards expected of pleadings drafted by lawyers." *McCormick v. City of Chicago*, 230 F.3d 319, 325 (7th Cir. 2000). The Court may grant a motion to dismiss only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). A court may take judicial notice of matters of public record without converting a 12(b)(6) motion into a motion for summary judgment. *Anderson v. Simon*, 217 F.3d 472, 474-75 (7th Cir. 2000); *Henson v. CSC Credit Services*, 29 F.3d 280, 284 (7th Cir. 1994).

**1.** **Facts**

Johnson alleges that while he was housed in Division 1 of the Cook County Jail, he was not allowed to obtain a newspaper subscription directly from the publisher. He filed a grievance, to no avail. When Johnson was transferred to Division 6, he noticed that other inmates were allowed to have foreign newspapers. He asked to be allowed to receive *U.S.A. Today*, the *Wall Street Journal*, *Jewish Exponent*, and the *Christian Science Monitor*. Defendants denied his request.

**2.    Analysis**

Defendants argue that Johnson failed to list all the lawsuits he has filed as directed in the complaint form required by Local Rule 81.1, which they argue requires dismissal; that at least three of the cases Johnson filed were dismissed on grounds that they were frivolous, malicious, or failed to state a claim, which also requires dismissal; that he fails to state a claim against defendants in their individual capacities; and that he fails to state a claim against defendants in their official capacities.

**a.    Failure to list all lawsuits**

Defendants point out that on his original complaint, Johnson listed one action he had filed previously, *Johnson v. Horn*, 150 F.3d 276 (3d Cir. 1998). However, their search of cases filed in other courts revealed thirteen cases or appeals that Johnson had filed. In his responses, Johnson argues that did not file three of those cases. In reply, defendants note that Johnson identified in his responses two additional cases he had filed.

After initially reviewing the motion to dismiss and Johnson's responses, the Court decided that it needed more information from Johnson in order to determine how many cases he had filed. The Court noted that the U.S Party/Case Index listed 114 matches for prisoner cases filed by "Jeffrey Johnson." Even after eliminating cases filed by "Jeffrey Johnsons" with middle initials other than "E" or middle names other than "Earl," some fifty-nine cases remained. The Court through its own research found *Johnson v. Daiwa Bank Trust Company*, 96 CV 7315 (S.D.N.Y. 1996), a case which neither Johnson nor defendants had mentioned. It also appeared that Johnson may have filed some cases while incarcerated in Georgia and Florida.

On July 19, 2005, the Court ordered Johnson to provide the following information:

> First, plaintiff must provide all names under which he has filed cases.
> Second, plaintiff must provide the name of every correctional institution in which he has been incarcerated and the time period in which he was at the institution. This includes all institutions whether county, state, or federal.
> Third, plaintiff must provide the identification numbers under which he has been incarcerated and note which ID goes with which institution.
> Fourth, plaintiff must provide a complete list of every case he has filed. This includes appeals.
> Fifth, plaintiff must provide information as to how much of the filing fees and costs plaintiff has paid on cases that were filed after the effective date of the Prison Litigation Reform Act of 1996 (April 26, 1996).

In response, Johnson stated that he has never filed cases under any other name than his own and that he has been incarcerated in thirty-six county, state, and federal correctional facilities in various areas of the country since 1977. In addition to the eleven cases Johnson had already admitted to filing, he listed eleven more and noted that these may not be all the lawsuits he has filed.

Defendants argue that Johnson made material misrepresentations by failing to inform or disclose to the Court a multitude of the lawsuits he has filed. They point out that the complaint form specifically instructs litigants:

> List ALL lawsuits you (and your co-plaintiffs, if any) have filed in any state or federal court (including the Central and Southern Districts of Illinois).
> IF YOU HAVE FILED MORE THAN ONE LAWSUIT, THEN YOU MUST DESCRIBE THE ADDITIONAL LAWSUITS ON ANOTHER PIECE OF PAPER, USING THIS SAME FORMAT, REGARDLESS OF HOW MANY CASES YOU HAVE PREVIOUSLY FILED, YOU WILL NOT BE EXCUSED FROM FILLING OUT THIS SECTION COMPLETELY, AND FAILURE TO DO SO MAY RESULT IN DISMISSAL OF YOUR CASE. . . .

In addition, the form complaint ends with a certification, reading:

> By signing this Complaint, I certify that the facts stated in this Complaint are true to the best of my knowledge, information and belief. I understand that if this certification is not correct, I may be subject to sanctions by the Court.

Johnson signed this certification on March 1, 2005. In response, Johnson claims that he has

4

corrected his mishap by amending his complaint to reflect his litigation history. He also claims that he has several serious medical conditions which contributed to his inability to recall all his litigation history.

The Court notes that although Johnson's original complaint plainly did not comply with the local rule, it appears that he has made, in his responses to the motion to dismiss, his amended complaint, and his responses to the Court's order of July 19, 2005, every attempt to list his litigation history in full. It also appears that much of Johnson's litigation took place in the mid-1990's, with only a few sporadic cases after 2000. Whether Johnson's failure to list these cases is due to the passage of time, his current medical condition, or some other reason is less important in the current circumstances than the fact that he he has now complied with the Court's instructions on its form complaint. The Court accordingly denies defendants' motion to dismiss as to this issue – particularly because the disclosure of all Johnson's prior cases does not reveal a basis for dismissal of the present case.

Nonetheless, Johnson is cautioned that when he signs a document filed with the Court, he is representing that the statements he makes are true to the best of his knowledge. *See* Fed. R. Civ. P. 11. For this reason, it is imperative that Johnson review his filings carefully before submitting them to ensure they are complete and accurate. Misrepresentations to a court can lead to sanctions, dismissal, or even criminal prosecution. *See Sloan v. Lesza*, 181 F.3d 857, 859 (7th Cir. 1999) (plaintiff's effective "fraud" on the court justified "immediate termination of the suit"). Specifically, in any federal action he files in this District the future, Johnson must include a *complete* list of every case he has filed anywhere in the United States; and he must likewise comply with the requirements of any other federal or state court in which he files a suit.

### b. Three "strikes"

Defendants argue that Johnson has accumulated three "strikes," which precludes him from bringing an action *in forma pauperis*. Under the Prison Litigation Reform Act,

> [i]n no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United Stats that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g). This provision takes into account all cases Johnson has filed, including those he filed before the PLRA's effective date of April 26, 1996. *See Evans v. Illinois Dept. of Corrections*, 150 F.3d 810, 811 (7th Cir. 1998); *Lucien v. Jockisch*, 133 F.3d 464, 468, 469 (7th Cir. 1998); *Tierney v. Kupers,* 128 F.3d 1310 (9th Cir. 1997); *Adepegba v. Hammons,* 103 F.3d 383 (5th Cir. 1996); *Abdul-Wadood v. Nathan,* 91 F.3d 1023 (7th Cir. 1996); *Green v. Nottingham,* 90 F.3d 415 (10th Cir. 1996).

Defendants contend that *Johnson v. Ridge*, 96-CV-806 (M.D. Pa. 1996) (dismissed for failure to prosecute with a ruling that any appeal from this order would be deemed frivolous, without probable cause and not taken in good faith); *Johnson v. Vidmer*, 96-CV-188 (W.D. Pa. 1996) (order granting motion to dismiss, granting motion to dismiss for failure to state claims upon which relief can be granted that was treated as motion for summary judgment); and *Johnson v. Vidmer*, 96-3355 (3d Cir. 1996) (appeal dismissed as moot; costs of $166.17 and $124.92 assessed against plaintiff, but no payment reflected on docket) constitute "strikes" for purposes of 28 U.S.C. § 1915(g).

In response, Johnson argues that none of these cases is a strike. The Court agrees. As Johnson points out, *Johnson v. Ridge*, 96-CV-806 (M.D. Pa. 1996), was dismissed for a failure to

prosecute, not because the district court ruled that the action was frivolous, malicious, or failed to state a claim. Although the district court ruled that any appeal would be deemed frivolous, without probable cause and not taken in good faith, that was not the grounds on which it dismissed the case. This case therefore does not constitute a "strike." In *Johnson v. Vidmer*, 96-CV-188 (W.D. Pa. 1996), the motions to dismiss were treated as motions for summary judgment. *See* Defs' Ex. D at 6-7. This case therefore does not constitute a "strike." The third case, *Johnson v. Vidmer*, 96-3355 (3d Cir. 1996), the Third Circuit dismissed Johnson's appeal as moot. Although the court assessed costs against Johnson, that is not one of the grounds for finding a "strike."

Failure to pay filing fees and costs in prior cases may also be grounds for dismissing an action, as defendants argue. However, though dockets in this District reflect installment payments in prisoner cases, many district courts do not provide this information on their dockets. Johnson states in his responses to the Court's July 19 order that it "is impossible for this plaintiff to respond to how much filing fees have been executed since the PLRA. The Western District of Pennsylvania litigation was fully paid as well as the appeal. Further the Habeas petitions in Southern District of Illinois were paid for in 2003 as was the litigation in Macon, Georgia before Judge Hicks." Without definitive evidence of nonpayment of filing fees and costs, this is not a basis for dismissal.

Although none of the cases that defendants cited constitutes a "strike," the Court located *Johnson v. Daiwa Bank Trust Company*, 96 CV 7315 (S.D.N.Y. 1996), which Johnson now acknowledges that he filed. This action was dismissed pursuant to 28 U.S.C. § 1915(d), and the district court certified that any appeal from this order would not be taken in good faith. This

7

case constitutes a "strike." But one strike is not enough under § 1915(g), and accordingly defendants are not entitled to dismissal on this basis.

    c. **Individual capacity**

Defendants argue that none of the named defendants can be held liable in their individual capacity. The Seventh Circuit has repeatedly held that "§ 1983 does not allow actions against individuals merely for their supervisory role of others" and that "individual liability under 42 U.S.C. § 1983 can only be based on a finding that the defendant caused the deprivation at issue." *Palmer v. Marion County*, 327 F.3d 588, 594 (7th Cir. 2003) (citations omitted). *See also Vance v. Washington*, 97 F.3d 987, 991 (7th Cir. 1996); *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995); *Rascon v. Hardiman*, 803 F.2d 269, 273 (7th Cir. 1986) (*citing Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983)). Lawsuits against individuals require personal involvement in the alleged constitutional deprivation to support a viable claim. *Palmer*, 327 F.3d at 594. Although direct participation is not necessary, there must at least be a showing that an individual defendant "acquiesced in some demonstrable way in the alleged constitutional violation." *Id*. That is, the supervisor must "know about the conduct and facilitate it, approve it, condone it, or turn a blind eye." *Jones v. City of Chicago*, 856 F.2d 985, 992 (7th Cir. 1988).

Although Johnson did not address this issue in his responses to the motion to dismiss, he submitted an amended complaint on May 26, 2005. In the amended complaint, Johnson claims that in addition to filing grievances, he wrote each of the named defendants in regard to not being able to subscribe to newspapers. Because Johnson has now alleged that each of the defendants was personally aware of and did nothing to correct the alleged constitutional violation, they are not entitled to dismissal on this basis.

8

### d. Official capacity

An official capacity claim is, in essence, a claim against the governmental entity that employs the defendant. *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985); *Chortek v. Milwaukee*, 356 F.3d 740, 748 n.4 (7th Cir. 2004). A local governmental entity is liable for damages only if a plaintiff can show that the alleged constitutional deprivation occurred as a result of an official policy, custom, or practice. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978); *Chortek*, 356 F.3d at 748. Unconstitutional policies or customs can take three forms: an express policy that, when enforced, causes a constitutional deprivation; a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a "custom or usage" with the force of law; or an allegation that the constitutional injury was caused by a person with final policy-making authority. *Garrison v. Burke*, 165 F.3d 565, 571-72 (7th Cir. 1999) (quotations omitted); *accord, Perkins v. Lawson*, 312 F.3d 872, 875 (7th Cir. 2002); *Brokaw v. Mercer County*, 235 F.3d 1000, 1013 (7th Cir. 2000).

In his amended complaint, Johnson alleges that the Sheriff's own policy permits up to three newspapers. Whether the denial of Johnson's subscriptions to newspapers was because of a widespread practice or caused by a person with final policy-making authority cannot be determined at the present stage of the case. Defendants are not entitled to dismissal on this basis.

### e. Johnson's miscellaneous motions

Johnson has moved the Court to transport him to a status hearing so that he may testify as to defendants' motion to dismiss. This Court has discretion to determine when an inmate shall attend court proceedings held in connection with an action initiated by the inmate. *Stone v.*

*Morris*, 546 F.2d 730, 735 (7th Cir. 1976). A status hearing is not the type of court proceeding necessitating the presence of the inmate. If and when Johnson's presence is needed, the Court will take the appropriate steps. Johnson's motion is accordingly denied.

Johnson's motion for order compelling discovery is denied as premature because no discovery schedule had been set at the time.

Johnson's motion opposing defendants' motion to dismiss is construed as a response to the motion to dismiss. In the future, in addition to not filing multiple responses to motions made by defendants, Johnson should be aware that he need not and should not designate his responses as motions.

## Conclusion

For the foregoing reasons, the Court denies defendants' motion to dismiss [16]. Johnson is granted leave to file his amended complaint, received by the Clerk on May 26, 2005. Defendants are given until November 23, 2005 to respond to the amended complaint. Johnson's motion to transport plaintiff [25] and motion for order compelling discovery [34] are denied. Johnson's motion opposing defendants' motion to dismiss [35] is terminated. The case is set for a status hearing on December 5, 2005 at 9:30 a.m.

                                                /s/ Matthew F. Kennelly
                                                  MATTHEW F. KENNELLY
                                                  United States District Judge

Date: October 24, 2005